<div style="border:1px solid">

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**

</div>

| | |
|---|---|
| **MIGUEL MONTERO BAEZ a/k/a**<br>**MIGUEL BAEZ-MONTERO,**<br>            Petitioner,<br><br>          v.<br><br>**UNITED STATES OF AMERICA,**<br>            Respondent.<br>_____ | ) **D.C. CV. No. 2005-147**<br>)<br>)<br>) Ref.: D.C. CR. NO. 2000-645<br>)<br>)<br>)<br>)<br>) |

**Copies to:**
    Ruth Miller, Magistrate Judge
    Jason T. Cohen, AUSA
    Linda George, Esq.
    Miguel Montero Baez, Reg. No. 05977-094, FCI Fort Dix, P.O.
Box 2000, Fort Dix, NJ 08640 - (Please Mark: "LEGAL MAIL")

<div style="border:1px solid">

**MEMORANDUM OPINION**

</div>

**FINCH, Senior District Judge.**

    This matter is before the Court for consideration of
Petitioner Miguel Montero Baez's ("Montero") motion to vacate, set
aside, or correct his sentence pursuant to 28 U.S.C. § 2255,[1] the
government's opposition, and Montero's reply thereto.  Where, as in
this case, the record conclusively shows that Montero is not
entitled to the relief sought in his § 2255 motion, an evidentiary
hearing is not required.  *See, e.g., United States v. Ritter*, 93
Fed. Appx. 402, 404 (3d Cir. 2004); *United States v. Headley*, 923

---

[1]    Under section 2255 a prisoner in federal custody under a sentence
of a court established by Congress, "may move the court which imposed the
sentence to vacate, set aside or correct the sentence" on the grounds that
"the sentence was imposed in violation of the Constitution or laws of the
United States, or that the court was without jurisdiction to impose such
sentence, or that the sentence was in excess of the maximum authorized by law,
or is otherwise subject to collateral attack."  28 U.S.C. § 2255.

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 2

F.2d 1079, 1083 (3d Cir. 1991)**;** *see also* Rules Governing Section 2255 Proceedings, Rule 8.


I.   **FACTS AND PROCEDURAL HISTORY**

The events relevant to this discussion began "on a date unknown, but no later than December 1997, through September 2000 in Puerto Rico."[2]   Montero and several co-defendants, none of whom were named in the instant matter, were charged with smuggling cocaine into Puerto Rico using low profile "go fast" vessels from Columbia or the U.S. Virgin Islands ("the Puerto Rico Indictment"). Montero pled guilty in the United States District Court for the District of Puerto Rico to conspiracy to possess with intent to distribute more than five (5) kilograms of cocaine from December 1997 through September 2000 in violation of 21 U.S.C. § 846. (D.P.R. CR. NO. 00-731).   He was sentenced on August 26, 2002 to a term of 97 months imprisonment and seven (7) years supervised release.[3]

On September 28, 2000, Montero and two co-defendants were

_____

[2]     Indictment (Count One) at 1, *United States v. Rodriguez*, No. 00-731 (D.P.R. Sept. 21, 2000).

[3]     The Court of Appeals for the First Circuit vacated the portion of Montero's sentence that imposed a seven year period of supervised release and remanded the matter to the District Court of Puerto Rico for re-sentencing pursuant to its directives on May 21, 2004.

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 3

observed by the United States Customs Service ("Customs")[4] in a boat leaving St. Thomas, U.S. Virgin Islands.  The Customs agents followed the boat that was being piloted by Montero while his co-defendant, Aguendo de Jesus Sanchez ("Sanchez"), appeared to be directing him where to go.  The boat carrying Montero and Sanchez met with another boat in an area south of St. Thomas and agents observed bales being transferred to the boat from St. Thomas. After the transfer, the boat from St. Thomas, now with three (3) people on board, Montero, Sanchez, and Julio Moncado-Polomo ("Moncado-Polomo"), left the area.  Later, with the assistance of a Customs helicopter and Coast Guard Marine Units, Montero, Sanchez, and Moncado-Polomo were observed throwing approximately eighteen (18) bales of cocaine overboard as they attempted to flee. Montero, as the pilot of the boat, attempted to flee.  However, during the chase, the boat engine stalled and the occupants jumped overboard where they were retrieved along with the 18 bales of cocaine.

Thereafter, Montero, Sanchez, and Moncado-Polomo were charged in the U.S. District Court of the Virgin Islands with violating various federal laws ("the St. Thomas Indictment").  In Count One

---

[4]     In March 2003, after the events at issue here, the United States Customs Service was divided into the Bureau of Customs and Border Protection and the Bureau of Immigration and Customs Enforcement, both of which are part of the Department of Homeland Security, H.R. Doc. No. 108-32 (2003).  *United States v. Reyeros*, 537 F.3d 270, 274 n.2 (3d Cir. 2008).

Montero v. USA
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 4

of the St. Thomas Indictment, the defendants were charged with knowingly and intentionally conspiring and agreeing with each other, and with persons unknown to the grand jury, to possess with the intent to distribute more than five (5) kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii) and 21 U.S.C. § 846. Count Two alleged that the three men knowingly and intentionally possessed with intent to distribute more than five (5) kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii). On October 17, 2001, Montero, represented by retained counsel, Michael Joseph, Esq. ("Att'y Joseph"), pled guilty to Count One,[5] and the remaining charge was dismissed.[6]

In the presentence report, Montero received one criminal history point for the drug offense in Puerto Rico. That one criminal history point coupled with a total offense level of 37 placed Montero in a U.S. Sentencing Guideline ("Guideline") range of 210-262 months, with a mandatory minimum of ten years.

At sentencing, Montero was represented by Att'y Joseph. During the hearing, it was determined that Montero's conviction in

---

[5]      Montero was assisted by a court interpreter at the plea hearing and the documents in his case were translated for him. (Gov't Resp., Plea Tr. at 2, 5.)

[6]      Montero and two co-defendants, Aguendo Sanchez and Julio Moncado-Polomo, all pled guilty to the drug conspiracy. United States v. Moncado-Polomo, 55 Fed. Appx. 598 (3d Cir. 2002) (affirming conviction); United States v. Sanchez, 53 Fed. Appx. 208 (3d Cir. 2002) (affirming conviction).

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 5

Puerto Rico placed him in a criminal history category of II, with

a resulting range of 235-293 months imprisonment.  He was sentenced

by the Honorable Thomas K. Moore to 240 months imprisonment, five

(5) years supervised release, no fine, and a special assessment of

$100.  Montero, with the assistance of a fellow inmate, appealed.

On appeal, Att'y Joseph was appointed as counsel for Montero.

Att'y Joseph essentially abandoned the appeal and a show cause

hearing was held on May 7, 2004 before the United States Court of

Appeals for the Third Circuit ("Court of Appeals").  The Court of

Appeals discharged Att'y Joseph as counsel for appellant Montero.

On May, 26, 2004, Gwendolyn R. Wilds, Esq. was appointed to

represent Montero.  Montero then retained Linda George, Esq.

("Att'y George") as his counsel on appeal and Att'y George appeared

in that matter on June 10, 2004.  On July 29, 2004, Att'y George

filed a motion in the Court of Appeals for an order either

remanding the case to this Court due to Att'y Joseph's failure to

represent Montero properly, or dismissing the appeal without

prejudice.  The motion sought to

> remand[] the instant matter to the District Court to
> afford Montero an opportunity to file a motion to
> withdraw his guilty plea based on newly discovered facts
> which have a direct bearing on the issues involved in
> this appeal and thus perfect the record below, and/or
> alternatively, an order dismissing the appeal without
> prejudice to subsequent reinstatement.

. . . .

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 6

      Montero intends to then file a motion for a new
trial, based on the newly discovered evidence of his
attorney of record and then pursuant to 28 U.S.C. § 2255,
pursue his claim of ineffective assistance of counsel.
It is appellant's position, which has yet to be
advocated, that among other issues to be raised, the
prosecution of both the Virgin Islands Indictment and the
Puerto Rico Indictment, which concerned the same periods
of time and the same offenses, abridged Montero's
constitutional rights.   Further, the increase in his
Criminal History category based upon conduct in the same
offense was error.

(Appellant Montero's Mot. of July 29, 2004 at 1, 4-5.)  The appeal

was dismissed without prejudice.  After dismissal in the Court of

Appeals, Att'y George opted neither to move this Court to dismiss

Montero's guilty plea based on newly discovered evidence, nor for

a new trial.   Instead, Att'y George filed the instant motion

pursuant to 28 U.S.C. § 2255.[7]


## II. DISCUSSION

    Montero's § 2255 motion primarily asserts that his counsel was

ineffective.   Specifically, he argues that Att'y Joseph:  1)

provided ineffective assistance in making minimal effort to meet

with him either by phone or in person while he was in pretrial

detention at MDC Guaynabo, Puerto Rico; 2) failed to explain the

nature of the charges against him; 3) failed to provide him with

---

      [7]    Att'y George was admitted *pro hac vice* to represent Montero in
this Court on September 16, 2005.

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 7

discovery; 4) failed to properly counsel him concerning his plea; 5) failed to adequately discuss legal issues that directly impacted his case; 6) failed to object to the presentence report which recommended an enhancement for his role as a pilot aboard a vessel pursuant to U.S. Sentencing Guidelines ("Guideline") 2D1.1(b)(2), and the assignment of one criminal history point due to his conviction in Puerto Rico; and 7) had personal and professional problems that impacted his ability to properly represent his client.  Montero further alleges that because of Att'y Joseph's ineffective assistance, and in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *United States v. Booker*, 543 U.S. 220 (2005), his sentence enhancement was not based upon facts adjudicated by a jury beyond a reasonable doubt.

**A. Standards of Review**

Section 2255 allows a person serving a federal sentence to allege errors of constitutional magnitude which had a "substantial and injurious effect or influence" on the proceedings.  *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *see also Petersen v. United States*, CV. No. 1998-066, 2003 WL 22836477, at *2 (D.V.I. Nov. 24, 2003).  Section 2255 relief "may only be granted when an error of law or fact constitutes a fundamental defect which

Montero v. USA
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 8

inherently results in a miscarriage of justice." *Guishard v.
United States*, No. 07-149, 2009 WL 3763817, at *2 (D.V.I. Nov. 5,
2009) (citing *United States v. Eakman*, 378 F.3d 294, 297 (3d Cir.
2004)). Even an error that may justify a reversal on direct appeal
will not necessarily sustain a collateral attack. *See United
States v. Addonizio,* 442 U.S. 178, 184-85 (1979).

"Where a defendant has procedurally defaulted a claim by
failing to raise it on direct review, the claim may be raised in
habeas only if the defendant can first demonstrate either 'cause'
for the failure to comply with the procedural requirement and that
actual 'prejudice' would result from the alleged constitutional
violation, or that he is 'actually innocent.'" *Bousley v. United
States*, 523 U.S. 614, 622 (1998) (internal citations omitted); *see
also Jenkins v. United States*, 333 F.3d 151, 155 (3d Cir. 2003);
*United States v. Sanders*, 165 F.3d 248, 250 (3d Cir. 1999). One
way to show cause is by demonstrating ineffective assistance of
counsel. *United States v. Mannino,* 212 F.3d 835, 840 (3d Cir.
2000).

Claims of ineffective assistance of counsel are governed by
the two-part test enunciated in *Strickland v. Washington*, 466 U.S.
668 (1984). The Court of Appeals recently noted that:

Under *Strickland,* a habeas petitioner must demonstrate
that: (1) counsel's representation fell below an

Montero v. USA
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 9

objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different.  For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  This review is deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (citations omitted).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

**B. Montero's plea of guilty was knowing and voluntary.**

During the October 17, 2001 plea colloquy pursuant to Rule 11 of the Federal Rules of Civil procedure, Montero was assisted by Att'y Joseph and a Spanish interpreter.  The Court asked Montero whether the documents filed in his case had been translated for him and whether he understood and appreciated the consequences of the plea agreement.  (Plea Tr. at 3-6.)  Montero answered in the

Montero v. USA
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 10

affirmative. (*Id*.) The Court confirmed that no threats or promises of lenient treatment had been made in exchange for Montero's guilty plea. (*Id*. at 9.) The Court verified that Montero had discussed the terms of the Guidelines with defense counsel and understood that the Court was not bound by the calculations of the Guidelines. (*Id*. at 6-8.) The Court summarized the rights Montero would give up by pleading guilty, and Montero again answered in the affirmative that he understood the waiver. (*Id*. at 8-9.) The Court further inquired:

> THE COURT:        So you are pleading guilty because in fact you believe you are guilty and not for any other reason?
>
> THE DEFENDANT: Yes.
>
> THE COURT:        Are you satisfied with the advice that you have received from [Att'y] Joseph, your lawyer, in this case?
>
> THE DEFENDANT: Yes.
>
> . . . .
>
> THE COURT:        And I am going to now read the count of the indictment to which you have agreed to plead guilty. . . . Mr. Montero, how do you plead to that, guilty or not guilty?
>
> THE DEFENDANT: Guilty.
>
> THE COURT:        Mr. Montero, I find your plea is entered knowingly, voluntarily, and with full understanding and appreciation of the consequences. . . .

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 11

(*Id.* at -11.)

The record before the Court indicates that Montero was apprised of the charges against him; was informed and understood the evidence the government was prepared to prove if the case proceeded to trial; gave ample indication that he understood the nature and consequences of his guilty plea; and signed the written plea agreement. (*Id.* at 8-9; Sentencing Tr. at 18.) The Court is, therefore, satisfied that Montero's plea of guilty was knowing and voluntary. *See, e.g., United States v. Rhymer*, No. 08-2697, 2010 WL 3529318, at *2 (3d Cir. Sept. 13, 2010) (finding that defendant's level of education, literacy, engagement and responsiveness to the judge's statements and questions throughout the plea colloquy, and indications that he understood the nature and consequences of his guilty plea supported a finding that his plea was knowing and voluntary). Thus, this analysis now turns to whether Montero waived his right to assert the challenges raised in the instant § 2255 motion. *See, e.g., United States v. Sturdivant*, 223 Fed. Appx. 184, 186 (3d Cir. 2007) (finding that defendant's plea of guilty was knowing and voluntary, the analysis proceeded to whether defendant waived his right to assert his challenges pursuant to his plea agreement).

## C. Montero's waiver of collateral attack was not knowing and voluntary.

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 12

A criminal defendant may waive both constitutional and statutory rights, and that waiver is valid and enforceable as long as it is entered into knowingly and voluntarily, and it does not work a miscarriage of justice. *United States v. Mabry*, 536 F.3d 231, 236-37 (3d Cir. 2008) (citations omitted); *see also United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001).

Montero's plea agreement states in relevant part:

> The parties agree that the final determination of the applicable sentence under the Guidelines, including any and all adjustments and determination of the defendant's criminal history category, shall be left to the court after its review of the Presentence Report. However, the parties do not waive their respective rights to object to any Guideline calculations and other information contained within the Presentence Report, or to appeal, as permitted by law, from any sentence imposed, with the exception that the defendant waives his right to challenge, ***on appeal or otherwise***, the guideline calculation of the court and the sentence imposed by the court pursuant to this agreement.

(Gov't Resp. at 4-5, Plea Agreement of Oct. 17, 2001 at ¶ 6 (emphasis added).)

In *United States v. Wilson*, 429 F.3d 455, 461 n.6 (3d Cir. 2005) the Court of Appeals found that the defendant was bound by the waiver of his right to appeal, but declined on direct appeal to address the effect of the provision in the plea agreement waiving the right to take a collateral appeal. However, in declining to address the issue, the Court of Appeals noted other circuits where

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 13

such waivers had been enforced.[8]  The issue here is whether Montero knowingly and voluntarily waived his right to file this collateral attack.  The Court has not found any other case interpreting the same waiver language used here.

Under these circumstances, and within the framework set forth in *Mabry*,[9] this Court must consider the validity of the waiver, specifically examining the (1) knowing and voluntary nature, based on what occurred and what defendant contends, (2) whether the scope of the waiver covers the appeal in question, and (3) whether enforcement would work a miscarriage of justice.  *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008) (citing *United States v. Jackson*, 523 F.3d 234, 243-44 (3d Cir. 2008)); *see also Mabry*, 536 F.3d at 237.

Montero bears the burden of presenting an argument that would

---

[8]     *See, e.g., United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001) (holding "that a waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made."); *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000) (same); *Watson v. United States*, 165 F.3d 486, 488-89 (6th Cir. 1999) (same); *United States v. Wilkes*, 20 F.3d 651. 653 (5th Cir. 1994) (upholding an express waiver of postconviction proceedings, including proceedings under § 2255, because the court could "see no principled means of distinguishing such a waiver from the [enforceable] waiver of a right to appeal").

[9]     *United States v. Mabry*, 536 F.3d 231 (3d Cir. 2009) (upholding a waiver in which the defendant waived "any right 'to appeal any conviction and sentence, including a sentence imposed within the mandatory minimum, on any and all grounds set forth in [18 U.S.C.§ 3472] or any other grounds, constitutional or nonconstitutional'" and his "right to challenge any conviction or sentence or the manner in which the sentence was determined in any collateral proceeding, including but not limited to a motion brought under [28 U.S.C. § 2255]'").

Montero v. USA
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 14

render his waiver unknowing or involuntary. *Khattak,* 273 F.3d at
563.  Montero argues that the instant challenge to his sentence is
permissible under the Plea Agreement, and the plain language of the
agreement does not proscribe a challenge based on the incompetence
of his counsel.  (Reply at 2-3.)  Montero also argues that it is
doubtful that he "could enforceably waive a right to challenge his
sentence due to the ineffective assistance of counsel." (Reply at
3.)  Montero further argues that he did not realize how high the
sentence would be when he pled guilty and it was only at sentencing
that he first learned of his actual exposure.  (Reply at 8.)

The government argues, on the other hand, that Montero waived
his right to challenge his conviction and argues that "Montero has
not demonstrated any valid reason why the waiver provision of the
plea agreement should not be enforced, or why his waiver was in any
way unknowing or involuntary." (Gov't Resp. at 5.)  The government
further argues that the issues raised in Montero's § 2255 petition
are "cloaked as ineffective assistance of counsel claims, but they
directly challenge the criminal history category and sentence
imposed by this court." (*Id.*)

The Court notes at the outset that "if avoidance of a
substantial period of incarceration is viewed as the basis for a
miscarriage of justice finding whenever the defendant has a
litigable issue, plea bargaining over the right to review will

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 15

cease to be viable." *Watts v. United States*, No. 08-4728, 2010 WL 2749349, at *3 (3d Cir. Jul. 13, 2010).  In determining whether the waiver was knowing and voluntary, the Court must review the plain language of the plea agreement and plea colloquy, and examine their sufficiency.  *See Mabry*, 536 F.3d at 239.

Plea agreements are construed according to contract law principles:

> "In determining the scope of a plea agreement's appellate-waiver provision, we are guided by the well-established principle that plea agreements, although arising in the criminal context, are analyzed under contract law standards."  "Thus, the language of a waiver, like the language of a contract, matters greatly."  However, "'in view of the government's tremendous bargaining power, we will strictly construe the text against it' as the drafter of plea agreements to the extent the agreement is ambiguous."  A contract term is ambiguous if it is "susceptible to more than one reasonable interpretation."

*Watts*, 2010 WL 2749349, at *2 (citations omitted).

This Court must determine whether the waiver provision of Montero's plea agreement precludes him from challenging his sentence in this collateral attack.  The Court is mindful that "[e]nforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [the defendant] from understanding his plea or from filing a direct appeal as permitted by his plea agreement would result in a miscarriage of justice." *United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007).

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 16

The language in paragraph six (6) of the plea agreement, waiving Montero's right to challenge, "on appeal or otherwise," the Guideline calculation and sentence imposed is, however, problematic.   In reviewing the enforcement of the waiver of collateral attack, the Court examines the guilty plea colloquy to ascertain whether Montero understood the terms of any plea agreement provision waiving the right to collaterally attack his sentence.   Fed. R. Crim. P. 11(b)(N).   Thus, this inquiry is informed, at a minimum, by (1) the specificity of the court's explanation of the waiver of collateral attack and the extent to which it limits the Montero's ability to challenge his conviction or sentence; (2) Montero's responses to the court's explanation; (3) the existence of any documentation referring to this waiver; (4) whether the Montero executed such documentation; and (5) the extent to which the prosecution has reviewed the waiver in its remarks to the court prior to the court's colloquy.   *See, e.g., United States v. Podgers*, 201 Fed. Appx. 878, 882 n.3 (3d Cir. 2006).

Here, after examining the record, the Court simply cannot find that Montero knowingly and voluntarily waived his right to file this collateral challenge.   *Cf. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001) ("[I]t is consistent with Supreme Court precedent to enforce a waiver of § 2255 *rights expressly contained in a plea*

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 17

*agreement* when the collateral attack does not challenge counsel's representation in negotiating or entering the plea or the waiver.") (emphasis added).  A clear waiver of collateral attack is missing throughout the record.  Having determined that the waiver language of the plea agreement is not valid and enforceable against Montero as it relates to this collateral proceeding, the court need not proceed to examine whether enforcing the waiver would work a miscarriage of justice.[10]  The Court will proceed to an analysis of Montero's ineffective assistance of counsel claims.

### D. Ineffective Assistance of Counsel

Under the first prong of *Strickland*, the analysis is whether Att'y Joseph made errors so serious that he was not functioning as the "counsel" guaranteed Montero by the Sixth Amendment, and that his representation fell below an objective standard of

---

[10]     In the waiver context, the Court of Appeals adopted a "common sense approach" in determining whether a miscarriage of justice would occur if the waiver were enforced, and looked at the underlying facts.  *Mabry*, 536 F.3d at 242-43.  In so doing, it "declined to identify a list of specific circumstances which would give rise to, or constitute, a miscarriage of justice.  *Id.*  The Court of Appeals did, however, note that it "connotes something grave and out of the ordinary" and suggests something more than "mere legal error."  *United States v. Calabretta*, No. 07-3956, 2010 WL 2588161, at *2 (3d Cir. Jun. 29, 2010) (quoting *Khattak*, 273 F.3d at 562 (citations omitted)); *see also Mabry*, 536 F.3d at 239.
In reviewing whether a miscarriage of justice would occur if the waiver were enforced, the Court looks to several factors in making that determination, including: the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.  *Mabry*, 536 F.3d at 242-43 (citing *United States v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001)).

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 18

reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 687, 688. The Court must examine Att'y Joseph's representation "within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (citation omitted).

Montero "bears the burden of proving his claim of ineffective assistance of counsel." *Gov't of the Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984). The Third Circuit, quoting *Strickland,* has cautioned that the range of reasonable professional judgments is wide and courts must take care to avoid illegitimate second-guessing of counsel's strategic decisions from the superior vantage point of hindsight. *United States v. Gray,* 878 F.2d 702, 711 (3d Cir. 1989).

**1.   Communication with Client**

In this collateral attack Montero asserts in his affidavit that Att'y Joseph never met with him in Guaynabo, Puerto Rico. (Pet'r 8/29/05 Affidavit in Supp. of § 2255, at 2.) Montero later asserts that Att'y Joseph provided ineffective assistance in only making "minimal effort to meet" with him either by phone or in person while he was in pretrial detention at MDC Guaynabo, Puerto Rico ("Guaynabo"). (Pet'r 9/12/05 Mem. of Law in Supp. of § 2255 at 3.) *Strickland* requires that Montero show that, considering the

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 19

facts of the case, his counsel's challenged actions were unreasonable. *Strickland*, 466 U.S. at 690. This, Montero has not done.

The record indicates that Att'y Joseph, with the translator, "spent at least 25 minutes describing all the salient facts and consequences" of the plea, and Montero indicated that he understood the contents. (Plea Tr. at 5.) Rule 4(b) of the Rules Governing Section 2255 Proceedings permits a district court to dispose of "vague and conclusory allegations" in a § 2255 motion without further investigation. *See, e.g., White v. United States*, No. 03-168, 2009 WL 1174512, at *4 (D.V.I. May 1, 2009). Montero has not shown any reasonable probability that even if Att'y Joseph had made more than a "minimal effort" to meet with him, than the result of the proceeding would have been different. *See, e.g., Dick v. Scroogy*, 882 F.2d 192, 197 (6th Cir. 1989) (finding no prejudice where defendant's counsel failed to interview defendant until the night before trial, and then for only 30-45 minutes, where there was no showing that the defense was prejudiced); *Villot v. Varner*, 465 F.Supp.2d 439, 447 (E.D.Pa. 2006) (denying ineffective assistance claim alleging failure to communicate where defendant showed neither that counsel's level of communication fell below an objective level of reasonableness nor any resulting prejudice). The record also belies Montero's claim that Att'y Joseph failed to

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 20

provide translated documents.  (Plea Tr. at 2, 5.)

    **2.  Failure to explain the nature of the charges.**

    Montero argues that Att'y Joseph failed to familiarize himself with the facts and law pertinent to the Puerto Rico Indictment as it related to the St. Thomas Indictment, and failed to explain the nature of the charges.  The government argues that the two indictments were not part of the same conspiracy, and Att'y Joseph adequately explained the nature of the charges Montero was facing.

    As the government correctly points out, "[e]ven if the time periods of the two indictments overlap, such temporal overlap by itself does not prove one conspiracy." *United States v. Smith*, 82 F.3d 1261, 1267 (3d Cir. 1996); *see also U.S. v. Rigas*, 605 F.3d 194, 213 (3d Cir. 2010) (setting forth a non-exhaustive list of factors a defendant must show and the court must consider in determining whether an indictment charges one or more conspiracies).

    To the extent, Montero attempts to challenge the indictment in this matter, he his procedurally barred from doing so in this collateral proceeding.  *Hall v. United States*, 410 F.2d 653, 659 (4th Cir. 1969) (stating that an indictment can be challenged in a habeas petition only if the indictment fails on its face to charge an offense); *Scott v. United States*, 231 F.Supp. 360, 362 (D.N.J.

Montero v. USA
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 21

1964) (same), *aff'd*, 342 F.2d 813 (3d Cir. 1965).

As it pertains to the ineffective assistance of counsel claim, the court is satisfied from the record that Att'y Joseph and the court adequately explained the nature of the charges to Montero. (Plea Tr. at 5, 9-11.)  Having failed to establish that Attorney Joseph acted in a professionally unreasonable manner, the Court need not proceed to the prejudice prong under *Strickland*.

   **3.   Failure to provide discovery and failure to contact Montero's court-appointed attorney in Puerto Rico.**

Montero is not clear as to what discovery he did not receive, but he alleges that Joseph failed to inquire into the specific facts in the Puerto Rico Indictment, thereby causing Montero to agree to plead guilty without any indication on the record that his options and defenses were explored or addressed.  For the sake of argument, the Court accepts as true Montero's assertion that Att'y Joseph did not confer with defense counsel in the Puerto Rico Indictment.  The record clearly indicates that Attorney Joseph was aware of the existence of the Puerto Rico matter:

     THE COURT: What's the status of the other conviction in Puerto Rico?  Has he been sentenced on that yet?

     MR. JOSEPH: Yes, Judge, he has been sentenced and he received 97 months on that, and he is serving that 97 months. . . .
     The first thing he told me was that he wanted the Court to know that he was already serving a sentence.  I told him unfortunately, this sentence is separate to that

Montero v. USA
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 22

sentence and could be in addition to that sentence.
He asked me to ask the Court that the sentence run concurrently. I -- he is already suffering a consequence of that sentence by now having to be served in Category 2 of the Guidelines, rather than Category 1 . . . reflects already his earlier conviction, that is having that prior felony conviction.

(Sentencing Tr. at 5-6.) The Puerto Rico Indictment is not before this Court and there is no basis upon which this Court must conclude that the two indictments were charging the same conspiracy. Therefore, Court simply cannot find, under the *Strickland* framework, that Att'y Joseph acted in a professionally unreasonable manner in not contacting defense counsel in Puerto Rico. The Court "is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel." *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002). Even if the Court were to find, for the sake of argument, that Att'y Joseph acted in a professionally unreasonable manner in failing to contact the Puerto Rico defense counsel, Montero would nonetheless fail on the prejudice prong because of the overwhelming evidence of his guilt in this case. *See Buehl v. Vaughn*, 166 F.3d 163, 180 (3d Cir. 1999) (concluding that the District Court correctly determined that the overwhelming evidence of Buelhl's guilt prevents him from satisfying *Strickland's* prejudice prong).

Montero v. USA
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 23

For the reasons stated, the Court also rejects Montero's claim that legal issues impacting his case were not "adequately" discussed.  Moreover, the Court notes that Montero has not alleged actual innocence.  "[I]n habeas jurisprudence, 'actual innocence' means factual innocence, not mere legal insufficiency."  *United States v. Garth*, 188 F.3d 99, 107 (3d Cir. 1999) (citation omitted).

**4.   Att'y Joseph effectively represented Montero in his handling of issues related to the presentence report.**

Montero argues that Att'y Joseph failed to object to the presentence report which recommended an enhancement for his role as a pilot aboard a vessel pursuant to Guideline 2D1.1(b)(2), and the assignment of one criminal history point due to his conviction in Puerto Rico.  Section 2D1.1(b)(2) provides that:

> If the defendant unlawfully imported or exported a controlled substance under circumstances in which . . . the defendant acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance, increase by 2 levels. . . .

U.S.S.G. § 2D1.1(b)(2).  At the plea hearing, Montero admitted that he acted as the pilot of the vessel carrying a controlled substance:

> THE COURT: And now I am going to ask Mr. Jenkins, the assistant assigned to this case to state for the record the facts that the government feels it can prove if you were to go to trial.  And I want you to listen

*Montero v. USA*
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 24

carefully because when he is finished I am going to ask
you whether you agree that the government could prove
these facts against you and whether what Mr. Jenkins
stated is true and correct.  Okay.

PLAINTIFF'S ATTORNEY: Thank you, Your Honor.  Your
Honor, if this case were to proceed to trial the
government would be able to prove that on September 28,
2000 the defendant Miguel Altero Montero Diaz along with
Julio Roberto Moncado-Polomo and Aguendo de Jesus Sanchez
were arrested as they attempted to import cocaine into
the United States specifically, Your Honor, members of
the United States Customs Air Marine and Untied States
Coast Guard detected and interdicted a 19 foot yawl along
with five hundred kilograms of cocaine.  *The defendant
was the pilot of the boat* and Mr. Pallamo [sic] and
Sanchez were passenger.  As the Coast Guard observed Mr.
Pallamo and Mr. Sanchez throwing approximately 18 bails
[sic] of cocaine overboard.  *The defendant again piloting
the boat* attempted to flee and allude the United States
Coast Guard but were eventually detained and arrested.
Thank you, Your Honor.

THE COURT: Mr. Montero, do you agree the government
could prove against you the facts as stated by Mr.
Jenkins?

THE DEFENDANT: Yes.

THE COURT: And is what he stated true and correct?

THE DEFENDANT: Yes.

(Plea Tr. at 9-10 (emphasis added).)  In light of the record before

the Court, there is no basis upon which to find that Att'y Joseph

acted in an objectively unreasonable manner in failing to object

the two-level enhancement for his role as the pilot of the vessel.

Having failed on the first prong of *Strickland*, an analysis of

prejudice is not necessary.

Montero v. USA
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 25

> **5.   Att'y Joseph provided constitutionally effective assistance as relates to the imposition of a Criminal History category of II.**

Montero argues that his conviction in Puerto Rico was not a prior offense for the purpose of calculating criminal history, because the Puerto Rico Indictment was based upon the same conduct as the St. Thomas Indictment.  As the government correctly points out, at the time the Presentence report was revised on July 10, 2002, Montero had pled guilty to the drug offense in Puerto Rico and was awaiting sentencing.  Accordingly, he was assessed with one criminal history point, but by the time he was sentenced in St. Thomas on April 2, 2003, he had been sentenced in the Puerto Rico case to 97 months incarceration.  (Gov't Response at 10.)

Montero was advised during the plea colloquy that his exact sentence would be determined at the time of sentencing.  (Plea Tr. at 8.)   The Court was, therefore, able to add three criminal history points based upon Montero's Puerto Rico conviction and subsequent sentence which came after his plea in this case, thereby shifting his criminal history up to a Category II.   With this record, the Court finds no error in Att'y Joseph's failure to object to the Montero's revised criminal history category.  Therefore, there is no need to continue to a discussion of prejudice where the first prong of *Strickland* was not met.

Montero v. USA
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 26

**6.  Personal and professional problems impacting Att'y Joseph.**

The Court has not been presented with anything more than the bald assertion that Att'y Joseph had "personal and professional problems" that impacted his ability to properly represent Montero. There have been no specific allegations or evidence presented to substantiate Montero's claims on this issue.  Thus, this argument must fail.  *See, e.g., United States v. Domian,* 2007 WL 294088, at *5 (W.D.Pa. Jan. 29, 2007) ("A claim of ineffective assistance must identify the specific errors counsel has made.  Conclusory allegations are not sufficient to support a petition under Section 2255.").

**7.  *Apprendi* and *Booker***

Montero also alleges that due to Att'y Joseph's ineffective assistance, and in light of *Apprendi* and *Booker* his sentence enhancement was not based upon facts adjudicated by a jury beyond a reasonable doubt.  Under *Apprendi*, the "standard range" is that statutory maximum, and "thus any facts found justifying a sentence above the standard range must be found by a jury." *Reinhold v. Rozum*, 604 F.3d 149, 153 (3d Cir. 2010) (citing *Blakely v. Washington*, 542 U.S. 296 (2004)).  Here, the statutorily authorized penalty was not less than ten (10) years and not more than life imprisonment, and his sentencing range was 235 to 293 months.

Montero v. USA
D.C. CV. NO. 2005-147 and
D.C. CR. NO. 2000-645
Memorandum Opinion
Page 27

(Sentencing Tr. at 14.)   Montero was not sentenced above the standard range and the Court finds that his sentence did not run afoul of *Apprendi*.   Therefore, Att'y Joseph cannot be found to have provided constitutionally deficient assistance for failing to object to a sentence that was within the standard range for his offense and criminal history category.   Finally, it is well-established that *Booker* does not apply retroactively to cases on collateral review.   *See, e.g., United States v. Sanchez*, 317 Fed. Appx. 225 (3d Cir. 2009) (citations omitted).

**III. CONCLUSION**

For the reasons stated, the Court concludes that Montero did not knowingly and voluntarily waive his right to collaterally challenge his sentence based on ineffective assistance of counsel claims.   Nonetheless, for the reasons stated, Montero's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 shall be denied.   An appropriate order accompanies this opinion.

**E N T E R :**

/s/ Raymond L. Finch
_____
**RAYMOND L. FINCH**
**SENIOR DISTRICT JUDGE**